# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SOCORRO GONZALEZ,

      Plaintiff,

v.                                                                                  CIV. NO. 04-0387 WPL

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.

## MEMORANDUM OPINION AND ORDER[1]

      Socorro Gonzalez applied for disability insurance and supplemental security income benefits. [Administrative Record (AR) 13]  After adverse decisions by the Commissioner of Social Security, she brought this action for judicial review.  [AR 19, 27-28, Doc. 1]  The matter is before me now on Gonzalez's Motion to Reverse Administrative Decision or, in the Alternative, a Remand of Said Decision [Doc. 7].  In her memorandum in support of this motion [Doc. 8], Gonzalez argues that the administrative law judge (ALJ) erred by failing to accord proper weight to her treating physicians' opinions, by finding her testimony not credible, by penalizing her for noncompliance with prescribed treatment, and by failing to obtain testimony from a vocational expert.  She also argues that the ALJ's residual functional capacity finding is not supported by substantial evidence.  For the reasons that follow, I will grant Gonzalez's motion in part.

## Factual and Procedural Background

      Gonzalez was born in 1970.  [AR 280]  Her past relevant experience includes working as a fireworks assembler, custodian, housekeeper, and grocery sacker.  [AR 14]  She completed high

---

[1] In accordance with 28 U.S.C. § 636(c)(1) and FED. R. CIV. P. 73(b), the parties have consented to having me conduct all proceedings and enter a final judgment in this case.

school and some college.  [AR 282]  Gonzalez has had diabetes since she was seventeen.  [AR 201]  In 2000, she was involved in an auto accident.  [AR 118]  Since that time she has had problems with her back.  [AR 285]  Gonzalez also suffers from obesity.  [AR 15]

The ALJ found that Gonzalez has severe impairments from degenerative lumbar disc disease, status post cervical lumbar strain, diabetes, and obesity, but that these impairments do not meet or equal any listed impairments.  [AR 15]  The ALJ then determined that Gonzalez retains the residual functional capacity (RFC) to perform a full range of sedentary work and that she cannot perform her past relevant work because it was in the light-to-medium range.  [AR 15-17]  Turning to the Medical-Vocational Guidelines, or "grids," the ALJ concluded that Medical-Vocational Rule 201.27 directed a finding of not disabled.  [AR 17-18]  Thus, he denied benefits at step 5 of the sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  [AR 5]

## Standard of Review

In reviewing the ALJ's decision, I must determine whether he applied the correct legal standards and whether his factual findings are supported by substantial evidence in the record.  *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id*.  A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it.  *Id.*  I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the ALJ.  *See id.*

## Treating Physicians' Opinions

In her first issue, Gonzalez argues that the ALJ violated the "treating physician rule." That rule requires the ALJ to give controlling weight to a treating physician's opinion regarding the nature and severity of a claimant's impairments if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). If the treating physician's opinion fails to satisfy one of these conditions, the opinion is not entitled to controlling weight, but it is still entitled to deference and must be weighed using several factors. *See Langley*, 373 F.3d at 1119; 20 C.F.R. § 404.1527(d)(2).

The treating physician rule only applies to "medical opinions." *See* 20 C.F.R. § 404.1527(a)(2), (d). "Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [the] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). A patient's subjective complaints are not transformed into "medical opinions" merely by virtue of being incorporated into a doctor's report. *See, e.g., Craig v. Chater*, 76 F.3d 585, 590 & n.2 (4th Cir. 1996).

Gonzalez asserts that the ALJ failed to give proper weight to her treating physicians' opinions and that he rejected numerous reports by her treating physicians in favor of the RFC assessment made by Disability Determination Services (DDS). I find this argument to be without merit for three reasons.

First, Gonzalez is simply wrong in asserting that the ALJ adopted DDS's RFC assessment. The ALJ did not mention DDS's RFC assessment in his decision. The assessment states that Gonzalez can lift up to 20 pounds occasionally and up to 10 pounds frequently and that she can stand

or walk for about 6 hours in an 8-hour workday. [AR 215-16] Thus, DDS considered Gonzalez to have an RFC for light work. *See* 20 C.F.R. § 404.1567(b). The ALJ, on the other hand, found that Gonzalez has an RFC for a full range of sedentary work, which involves lifting no more than 10 pounds at a time and only occasional walking and standing. *See id.* § 404.1567(a).

Second, the statements cited by Gonzalez in two medical reports either were not entitled to controlling weight because they do not constitute medical opinions or were not actually rejected by the ALJ. Gonzalez relies on the following language from a June 12, 2000 report: "'Chief Complaint: Low back pain and neck pain . . . continues [t]o have severe pain radiating through her hips and legs . . . marked tenderness over right sacroiliac joint . . . pain with extension and pain with lateral bending . . . . will inject into the left sacroiliac joint . . . epidural steroid injection for pain control.'" [Doc. 8 at 2, *quoting* AR 121-22]

The quoted language consists of Gonzalez's description of her symptoms and the doctor's description of the treatment provided. Because it does not reflect the doctor's judgment about the nature and severity of the impairments or symptoms, it was not entitled to controlling weight. Furthermore, later in the same month this doctor prepared a "Medical Certificate for Return to Work" form, stating that Gonzalez could perform light work.[2] [AR 120] As noted above, the ALJ found that Gonzalez could perform only sedentary work. Thus, even if the language quoted by Gonzalez constitutes the doctor's medical opinion that Gonzalez's back condition was painful, he believed that in spite of her pain Gonzalez could perform a greater range of work than the ALJ did.

Gonzalez takes certain phrases out of context from a February 2002 medical report to give

---

[2] The doctor circled "LIGHT WORK," which was defined on the form using similar language as the Social Security Administration's definition. The "Comments" section of the form contains a handwritten notation that appears to read "No prluq sett or stand." [AR 120]

the impression that the doctor considered her back condition to be disabling. She cites only the italicized language below from that report:

> **CHIEF COMPLAINT:**  *Low back pain.*
> **HISTORY OF PRESENT ILLNESS:**  [W]e recommended a treatment protocol . . . . The patient was noncompliant with the recommendations. . . . . She describes if anything the *pain has gotten progressively worse*.
> . . . .
>
> **IMPRESSION:**  We did not examine this patient. We discussed with her the treatment options with regard to her *incapacitating back pain*. We reviewed the Magnetic resonance imaging scan and we felt that there was mild annulus bulging, subligamentous L5-S1. She was in the process of asking for medications. . . . As she was not interested in any treatment, we felt we had exhausted our options in seeing this patient for about 18 months and her having been extremely noncompliant. We would be happy to work with her, however we feel that her motivations are something different than what is presented in her verbal appearance, especially with her history of noncompliance and her requesting medications. We feel that most probably that she *does have disc disease* and we would be happy to assist her if we can come to some motivation of what this patient is trying to get done. [AR 118]

Read in context, it is obvious that the phrases "Low back pain," "pain has gotten progressively worse," and "incapacitating back pain" reflect Gonzalez's complaints to the doctor, rather than the doctor's opinion. Therefore, they are not entitled to controlling weight.

As for the doctor's opinion that Gonzalez probably had disc disease, it appears that the ALJ did give controlling weight to this opinion. He noted the opinion at one point in the decision, and at another point in the decision he stated, "The medical evidence indicates that the claimant has degenerative lumbar disc disease, status post cervical lumbar strain, diabetes mellitus, and obesity. These impairments are 'severe' within the meaning of the Regulations . . . ." [AR 15-16]

Third, many of the reports cited by Gonzalez consist only of diagnoses, without any accompanying indication that the conditions affect Gonzalez's ability to perform basic work activities. Therefore, even if the ALJ had given controlling weight to these reports, the outcome of the case

would not have been different. *Cf. Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) (holding that a claimant must show more than the mere presence of a condition to satisfy her burden at step 2 of the sequential evaluation).

For example, Gonzalez argues that the ALJ rejected a report stating that she has complained of dysuria, has a history of pancreatitis, and has had "multiple admissions for near BKA symptoms." [AR 166] There is nothing in this report to indicate that these conditions or symptoms have an ongoing effect on Gonzalez's ability to perform basic work activities. The same is true of the diagnoses of spondylolisthesis, neuropathy, nephropathy, hyperlipidemia, and hypertension.

### Credibility and Noncompliance

In her second issue, Gonzalez argues that the ALJ erred in finding that her testimony was not credible. In her fourth issue, she argues that the ALJ penalized her for being noncompliant with prescribed treatment. Because these issues are interrelated, I will discuss them together. I find both issues to be unavailing.

Gonzalez asserts that the ALJ failed to link his credibility finding with the evidence and failed to provide any reason for disbelieving her subjective complaints other than a lack of objective evidence. She argues that there was no legitimate reason for discrediting her testimony other than occasional noncompliance. Additionally, she argues that her noncompliance was due to her lack of sophistication and her indigency.

Judging credibility is "peculiarly the province" of the ALJ. *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). Nevertheless, a credibility determination should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of a finding. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

An ALJ's evaluation of a claimant's subjective complaints of pain necessarily turns on an assessment of the claimant's credibility. *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2002). Subjective complaints alone are not sufficient to establish disability. *See Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). In weighing a claimant's credibility, the ALJ may consider whether objective medical evidence supports the claimant's allegations regarding the severity of her pain. But the ALJ cannot wholly disregard the claimant's testimony simply because there is no objective medical evidence to confirm the pain's severity. *See id.* at 1489; Social Security Ruling 96-7p.

The Tenth Circuit held in *Kepler* that the ALJ should consider the following factors when evaluating subjective allegations of pain: 1) whether the claimant established a pain-producing impairment by objective medical evidence; 2) if so, whether there is a loose nexus between the proven impairment and the claimant's subjective allegations of pain; and 3) if so, whether considering all the evidence, both objective and subjective, the claimant's pain is in fact disabling. 68 F.3d at 390. Under the third factor, the ALJ should consider the claimant's daily activities; the location, duration, frequency, and intensity of the pain; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of medications; and other treatment or measures the claimant uses to relieve the pain. *Hamlin*, 365 F.3d at 1220; Social Security Ruling 96-7p. "*Kepler* does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *White*, 287 F.3d at 909 (citation and internal quotation marks omitted).

An ALJ may rely on a claimant's refusal to follow prescribed treatment to determine that the claimant is not credible if the treatment would restore the claimant's ability to work and was refused

7

without justifiable excuse.  *See Thompson*, 987 F.2d at 1490.  Indigence may be a justifiable excuse.  *See id.* at 1489-90.

Gonzalez testified that she cannot sit for more than fifteen or twenty minutes at a time because of her "excruciating" back pain.  [AR 284-85, 292]  Similarly, she is only able to walk for about fifteen or twenty minutes at a time.  [AR 292]  Because of her back problem, she cannot lift more than five pounds.  [AR 293]  She cannot kneel, cannot bend over "very much," and squatting and climbing stairs hurt her back.  [AR 293] She tries to do housework, but her sixteen-year-old son has to help her.  [AR 280, 289]

Gonzalez also testified that her feet are constantly swollen.  [AR 284]  Because of this, she has to take breaks from doing the housework to sit down and elevate her feet.  [AR 290]  When her feet swell, it feels like needles in the bottom of her feet.  [AR 291] She often has numbness in her fingers.  [AR 295]  Although she can open and close her hand to make a fist and can pick up a billfold, she drops things when her hands are swollen.  [AR 293, 295]

Gonzalez drives her car about twice a week.  [AR 287]  "Once in a while" she goes out to eat.  [AR 288-89]  She does the grocery shopping, but her son has to put the items in the cart.  [AR 290]  It takes her "forever" to take care of her personal hygiene, such as showering and dressing.  [AR 291-92]

Gonzalez stated that she can see "more or less" when she wears her glasses, but light hurts her eyes.  [AR 281, 291] She testified that she believes her medicines make her feel tired.  [AR 287]  When she did not take her medicines it was because she could not afford them.  [AR 294-95]  She receives $256 in food stamps and $310 in AFDC per month.  [AR 280-81]

The ALJ found that Gonzalez's testimony was not "fully credible" because it was "not

consistent with the record as a whole, especially the objective medical evidence and her failure to follow prescribed medical treatment." [AR 16] Thus, the ALJ expressly based his adverse credibility finding not only on the objective medical evidence, but also on Gonzalez's noncompliance. There is substantial evidence to support both of these bases.

The ALJ noted that her treating doctors found Gonzalez to have only mild annulus bulging and minimal neuroforaminal narrowing at L4-5 and L5-S1. She has 5/5 motor strength and intact sensory function. She was able to ambulate with stable balance and proprioception. A radiology report of her lumbar spine showed that all osseous structures were within normal limits. There was a significant amount of lumbar straining, but no obvious fractures or lytic lesions were noted, and disc spaces were well maintained. [AR 16-17, 118, 122, 151-52]

The ALJ also detailed Gonzalez's noncompliance. He cited the February 2002 report, which states that she was "extremely noncompliant." [AR 16, 118] He also cited several reports regarding her noncompliance with diabetes treatment. [AR 16-17] During one period, for example, Gonzalez basically discontinued all her medications except insulin and stopped monitoring her glucose. One of her doctors admonished her that if she was not going to be compliant, he would have to consider other options for her care. [AR 16, 171]

The record does not support Gonzalez's contention that her noncompliance was only occasional. The record contains many examples of her noncompliance, including failure to pursue recommended treatment, take prescribed medications, and appear for scheduled appointments. [AR 118, 134, 139, 140, 155, 166, 171, 235, 264]

Gonzalez's argument that she lacked the sophistication to be compliant is based on an isolated reference to her "slow mentation" in one physician's report. [AR 264] Gonzalez completed high

9

school and some college work. [AR 282] A diabetes educator met with Gonzalez and reported, "Variables affecting learning appear to be none" and "Learning was judged to be satisfactory at this visit." [AR 206-07]

The record also does not support Gonzalez's contention that she could not afford treatment. The medical reports do not indicate that Gonzalez mentioned inability to pay as a reason for noncompliance. Moreover, there is nothing in the record to indicate that she sought free or low-cost medication or was refused medication because of inability to pay. *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992) (upholding ALJ's determination that claimant's financial hardship did not justify failure to seek medical treatment, based partly on lack of evidence that she sought low-cost treatment or that she had been denied care because of her financial condition); *see also Allen v. Apfel*, No. 99-3249, 2000 WL 796081, at *3 (10th Cir. June 21, 2000) (unpublished) (citing *Murphy* and noting that the "record contains no evidence plaintiff sought medical treatment . . . , but was refused for an inability to pay"). When her doctors were notified that her insurance would not cover certain medications, they switched her to other medications or successfully sought an exception from her insurer. [AR 134, 213]

### Substantial Evidence for the RFC Determination and Reliance on the Grids

In her third issue, Gonzalez argues that the ALJ's determination that she can do the full range of sedentary work is not supported by substantial evidence. In her fifth issue, she argues that the ALJ erred by failing to obtain vocational expert (VE) testimony.

In the absence of findings supported by a specific weighing of the evidence, it is impossible to assess whether an ALJ's decision is supported by substantial evidence. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Although the ALJ is not required to discuss every piece of

evidence, he must discuss uncontroverted evidence that he chooses not to rely on and significantly probative evidence that he rejects. *Id.* at 1009-10. Moreover, when the ALJ finds that the claimant's testimony was not fully credible, he should discuss which testimony was credible and which was not credible. *See Hayden v. Barnhart*, 374 F.3d 986, 992-94 (10th Cir. 2004).

The evidence and findings regarding Gonzalez's back condition and her diabetes support the ALJ's determination that she can perform the full range of sedentary work. The ALJ found that Gonzalez has "degenerative lumbar disc disease [and] status post cervical lumbar strain," and that a radiology report indicated she had spondylolisthesis, but he also noted that her treating doctors found her to have only mild annulus bulging, 5/5 motor strength, intact sensory function, and the ability to ambulate with stable balance and proprioception. [AR 15-16]   Although Gonzalez testified that her back condition causes "excruciating" pain and limits her ability to sit, walk, kneel, squat, bend, lift, and climb stairs, the ALJ's finding that this testimony was not credible was supported by substantial evidence, as explained above. The record reflects, and the ALJ acknowledged, that Gonzalez's diabetes is poorly controlled. [AR 17]  As already discussed, however, there is evidence that the poor control results from Gonzalez's noncompliance with prescribed treatment. [AR 139, 171]  When she complied with treatment, her condition improved. [AR 259]

The evidence regarding some of Gonzalez's other conditions is consistent with the determination that she can perform the full range of sedentary work. The record contains objective medical evidence that Gonzalez has diabetic nephropathy, hyperlipidemia, and hypertension. [AR 255]  Although the ALJ did not mention this evidence, there is nothing in the record to indicate that these conditions limit Gonzalez's ability to work. Neither Gonzalez nor her physicians have described any functional limitations associated with the conditions. The hyperlipidemia and hypertension are largely

controlled through medication.  [AR 140, 256, 260]  A medical report indicates that Gonzalez only has "early nephropathy" with good renal function and that it can be controlled by keeping her diabetes and hypertension under control.  [AR 203]

As the ALJ recognized, there was some evidence of diabetic neuropathy.  [AR 15, 255] Although Gonzalez claimed that she frequently experiences numbness in her fingers [AR 239, 295] there was no objective medical evidence that the neuropathy causes any functional limitations.

Evidence regarding two other conditions--diabetic retinopathy and edema--seems to be inconsistent with the determination that Gonzalez can perform the full range of sedentary work.  The ALJ failed to explain how Gonzalez can perform the full range of sedentary work in spite of these conditions.

One medical report states that Gonzalez has "significant" diabetic retinopathy; another states that she has "background" diabetic retinopathy.  [AR 237, 240]    Notes from one doctor's examination of Gonzalez indicate that she has photophobia.[3]  [AR 234]  Another doctor's report indicates that Gonzalez complained of blurry vision.  [AR 202] Gonzalez testified that light hurts her eyes, and that this prevents her from watching television.  [AR 291][4]

---

[3] Photophobia is defined as "Painful oversensitivity to light."  Whereas most phobias are irrational, photophobia is usually an appropriate rational response.  *See* MedicineNet.com.

[4] It appears that Gonzalez attempted to give additional testimony regarding her eye problems, but the record does not include that testimony.  During the ALJ's questioning of Gonzalez, the following exchange occurred:

| | |
|---|---|
| ALJ: | [W]ith the glasses, you do pretty well.  Right? |
| Gonzalez: | Not really.  I – |
| ALJ: | Okay.  Hear okay?  [AR 281] |

Later, this exchange occurred:

| | |
|---|---|
| ALJ: | Do you like to read? |

The ALJ discussed retinopathy at two points in his decision. First, he noted in his step 3 analysis that there was no evidence that Gonzalez has vision of 20/200 or less in the better eye after correction. [AR 15] Second, he noted in his step 4 analysis that "[a]lthough there was evidence of diabetic retinopathy, she was found to have 20/30 vision bilaterally." [AR 17, 236] The ALJ never mentioned the evidence that Gonzalez's retinopathy was significant or the evidence regarding sensitivity to light and blurred vision.

The record also contains medical reports demonstrating that Gonzalez suffers from edema, or swelling, of her feet and hands. A March 2002 medical report states that Gonzalez had "[a]cute pedal edema." [AR 140] A May 2002 endocrinologist's report states that although Gonzalez had developed significant extremity swelling earlier in the year, it had improved dramatically over the past month. [AR 238] The endocrinologist suspected that the swelling was caused by two medications that she had recently stopped taking. [AR 238, 240] However, an April 2003 report states that Gonzalez had "1+ ankle edema." [AR 255-56] The report further states, "This has been going on for a year and initially responded to Lasix, but is getting worse by the patient's report." [AR 255] Gonzalez testified that her feet are constantly swollen, requiring her to elevate them, and that she has swelling in her hands, causing her to drop things. [AR 284, 295]

The ALJ only discussed the May 2002 report, which indicated that the swelling had improved. [AR 17] He did not discuss the subsequent report, which indicated that edema was a continuing

---

Gonzalez:   I love to read, but now I can't because my eyes don't –
ALJ:        Okay. But you can read. . . . . [AR 289]

After the ALJ's examination, Gonzalez's attorney questioned her. He began his questioning regarding her eye problems by stating, "You said that your vision is blurry despite using glasses." The transcription of the hearing reflects that the ensuing exchange between Gonzalez and her attorney was inaudible. [AR 295-96]

problem, nor did he discuss Gonzalez's testimony regarding the swelling of her feet and hands.

Although the ALJ found that Gonzalez's testimony was not "fully" credible, he did not elaborate on which portions of the testimony were credible and which were not credible. From the way the decision is written, the negative credibility finding appears to relate only to the summary of the evidence immediately preceding it:

> The claimant testified that she cannot sit, stand, or walk for more than 15 or 20 minutes, and she is limited to lifting no more than five pounds. She further testified that it is painful for her to kneel, and that she can bend a little. She cannot squat. She stated that she can walk up a few stair steps at a time before she has to stop. I find that the claimant's testimony of functional limitations is not consistent with the record as a whole, especially the objective medical evidence and her failure to follow prescribed medical treatment. Therefore, I find her testimony not to be fully credible. [AR 16]

The ALJ did not mention Gonzalez's testimony regarding edema and vision problems, and he discussed only the medical evidence regarding these conditions that supported his decision. Under these circumstances, I cannot determine whether the RFC determination is supported by substantial evidence.

Because I cannot determine whether the RFC determination is supported by substantial evidence, I necessarily cannot determine whether the ALJ erred by relying conclusively on the grids without obtaining VE testimony. An ALJ may not rely conclusively on the grids unless the claimant: 1) has no significant nonexertional impairment, 2) can do the full range of work at some RFC level on a daily basis, and 3) can perform most of the jobs in that RFC level. *Thompson*, 987 F.2d at 1488. Although the mere presence of an impairment does not preclude reliance on the grids if the impairment would not affect the claimant's ability to work, *see id.*, the ALJ failed to explain why Gonzalez's edema and vision problems are not significant impairments.

**Conclusion**

For the reasons stated herein, this matter must be remanded for the ALJ to consider the effect, if any, of Gonzalez's edema and vision problems on her ability to perform the full range of sedentary work, to make appropriate findings, and to take additional testimony, including VE testimony, if necessary. Accordingly, Gonzalez's Motion to Reverse Administrative Decision or, in the Alternative, a Remand of Said Decision [Doc. 7] is granted in part. This matter is remanded to the Commissioner for further proceedings consistent with this opinion.

IT IS SO ORDERED.

*William P. Lynch*
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE